**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0206n.06
Filed: March 28, 2006

**04-4254**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA, )
)
    Plaintiff-Appellee, )
)
v. ) ON APPEAL FROM THE UNITED
) STATES DISTRICT COURT FOR THE
WAVERLEY JUDD, ) SOUTHERN DISTRICT OF OHIO
)
    Defendant-Appellant. )

Before: MARTIN, NORRIS, and DAUGHTREY, Circuit Judges.

**PER CURIAM.** The defendant, Waverley Judd, appeals from his conditional guilty plea, entered on a two-count indictment that charged manufacturing marijuana and possession with intent to distribute an unspecified amount of methylenedioxymeth-amphetamine, known as MDMA and by the street name Ecstacy. He was sentenced to two concurrent terms of 25 months' incarceration and three years of supervised release. The plea agreement that the defendant entered with the government permitted an appeal of the district court's denial of the defendant's motion to suppress but purported to limit the scope of the appeal to "the sole issue of the adverse determination" of the suppression issue. The government therefore argues on appeal that the defendant has waived the right to

challenge to his sentence on the basis of *United States v. Booker*, 543 U.S. 220 (2005).
We affirm the conviction but remand the case for re-sentencing.

**FACTUAL AND PROCEDURAL BACKGROUND**

The investigation of Judd was initiated by tip from a confidential informant who contacted Officer Brandon Holbrook of the Jackson Township police department and told him that Judd "would be leaving Ohio via personal vehicle for Texas to pick up or purchase approximately sixty pounds of marijuana" the following day. The informant also provided Holbrook with information about Judd's car and license plate number and told the officer Judd resided at 211 Alton Avenue.

The next morning a DEA task force set up surveillance at 211 Alton Avenue. The officers followed Judd after he departed from the residence. Judd drove to two other addresses and eventually to a Family Dollar store. The officers approached Judd as he exited the store, stopped him, and searched his person. They found approximately $4,000 in his jacket. The officers then searched Judd's car. At the later suppression hearing, the government contended that Judd consented to the search, but Judd disputed this fact. During the search of the vehicle, officers recovered what was referred to as marijuana and cocaine residue, a box of gloves, potting soil, and baggies suitable for packaging drugs for sale.

After they completed the search of the vehicle, the officers asked Judd for permission to search the residence at 211 Alton Avenue. Judd refused to consent, saying that although he did not own the property, he was manager of the property and had access to it and the adjoining unit, 209 Alton Avenue. Holbrook then sought and obtained a search warrant for 211 and 209 Alton Avenue.

In support of his application for the warrant, Holbrook included statements of the confidential informant as well as facts discovered during the surveillance and stop of Judd. In addition, the affidavit contained information discovered by other law enforcement personnel during a visit to 209/211 Alton Avenue in an attempt to make contact with anyone there. The affiant stated:

> Upon arrival, officers found all doors were locked and received no answer at the door. An inspection of the trash in the dumpster in the alley directly behind the residence revealed marijuana residue and materials commonly used to pack marijuana in the trash. Officers found an open window on the side of the residence and detected an odor of marijuana coming from within the house.

The affidavit also described 211 Alton Avenue as Judd's address.

A federal magistrate issued warrants for 209 and 211 Alton Avenue. During the execution of the warrant, officers found approximately 34 marijuana plants in the basement, packing material, and other controlled substances. As a result of items seized during the search of the residences, Judd was charged with manufacturing marijuana and possession with intent to distribute MDMA.

Judd filed motions to suppress evidence from both the search of the premises at 211 Alton Avenue and that seized during the encounter outside of the Family Dollar store. With regard to the latter, the defendant contended that the officers did not have reasonable suspicion to believe that he was engaged in criminal activity, as required to support a *Terry* stop, and that items taken from his person and from his car during the ensuing search had been seized in violation of the Fourth Amendment. His challenge to the sufficiency of the affidavit underlying the search warrant was based on that the fact that the confidential informant's reliability was not established in the affidavit and that information concerning the evidence seized during the stop at the Family Dollar store should be redacted from the affidavit.

The district court granted the defendant's motion to suppress evidence seized from him and from his car during the initial stop, holding that the "seizure was not based on reasonable suspicion nor on probable cause, but was based on an inarticulate hunch, an impermissible basis." But the court denied the motion to suppress the evidence seized in the search of the premises at 209 and 211 Alton Avenue, finding that, even without the informant's statements and information from the illegal stop, the affidavit was sufficient to support the issuance of the search warrant. The court said, "Discounting the failure to verify the allegations of the unknown informant, the issuing magistrate was considering a search warrant application that asserted that a person already once convicted of distributing marijuana and once arrested for marijuana possession was now living in a

residence that had items used in distributing marijuana in the trash behind it, and the odor of marijuana coming from its windows."

**ANALYSIS**

**1.  *The Fourth Amendment Challenge to the Conviction***

We conclude that the district court's decision upholding the validity of the premises search was proper.  Although the confidential informant's tip could not, alone, supply the basis for the issuance of a search warrant, it provided information that the officers could and did verify.  A check of drivers' license records indicated, for example, that Judd's address was 211 Alton Avenue, and mail addressed to him was found in a mailbox attached to the building at that address.  Inspection of trash located immediately behind the residence revealed incriminating evidence, as did the odor emanating from inside the building.  In addition, neighbors verified that Judd had recently been seen going in and out of both sides of the duplex.  While it is true that no one had seen the defendant in the immediate vicinity of the trash receptacle and that there was no evidence about the postmarked date on the mail in the mailbox, we conclude that the totality of the information in the affidavit was sufficient to establish probable cause to support the issuance of the search warrant.  Its execution in turn resulted in evidence sufficient to support the defendant's guilty pleas to the offenses contained in the indictment.  We therefore affirm those convictions.

## 2. *The Booker Challenge to the Sentence*

The government's argument that the terms of the plea agreement preclude our review of the defendant's sentence. However, it appears that the limiting language in the agreement applied only to the defendant's conviction and not necessarily to the determination of his sentence. Indeed, at Judd's sentencing hearing, the district court acknowledged that post-*Blakely* developments might cause the sentencing guidelines to be called into question, noting that in that event, "a Court of higher jurisdiction must deal with this matter." The district judge also advised the defendant, after imposing sentence, that he had "the right to appeal the sentence of this Court if [he] believe[d] that the Court has done anything improper . . . ."

In fact, application of the guidelines as mandatory in this case was later held to be unconstitutional in the Supreme Court's *Booker* opinion, released some four months after sentence was imposed in this case. It follows that the sentence must be vacated and the case remanded for resentencing. On remand, the district court should review the pre-sentence report to determine whether the calculations contained in the report would result in a Sixth Amendment violation, given that the indictment does not specify the amount of controlled substances for which the defendant stands convicted, and that neither the plea agreement nor the record of the guilty plea hearing contains an admission by the defendant as to those amounts. In addition, of course, the guideline range must be considered advisory only.

## <u>CONCLUSION</u>

For the reasons set out above, we AFFIRM the defendant's convictions but VACATE the sentence imposed by the district court and REMAND the case for re-sentencing.